UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80806-CIV-HURLEY

JOHN WISEKAL, as Personal Representative
of the ESTATE OF DARIAN WISEKAL,
    plaintiff,

vs.

LABORATORY CORPORATION
OF AMERICA HOLDINGS
and GLENDA C. MIXON,
    defendants.
_____/

ORDER GRANTING DEFENDANTS' MOTION FOR REMITTITUR
OR ALTERNATIVELY FOR NEW TRIAL

**THIS CAUSE** is before the Court on the defendants' motion for remittitur, or in the alternative, for new trial, pursuant to § 768.74, Fla. Stat. and Fed. R. Civ. P. 59 [ECF 301], the plaintiff's response in opposition [ECF 315] and the defendant's reply [ECF 321].

I. Background

On April 16, 2014, the jury returned its verdict in the above-captioned wrongful death action, awarding the following categories of economic and non-economic damages:

| | |
|---|---|
| Lost net accumulations to the Estate: | $ 87,200.00 |
| Lost Past and Future Support and Services: | $ 261,000.00 per claimant |
| Non-economic damages to John Wisekal: (surviving spouse of fourteen year marriage) | $ 5,000,000.00 |
| Non-economic damages to Baylor Wisekal: (Surviving child age 13) | $ 7,500,000.00 |
| Non-economic damages to Bianca Wisekal: (surviving child age 10) | $ 7,500,000.00 |

The jury further determined that the plaintiff's decedent, Darian Wisekal, was also negligent, and apportioned 25% of the contributing fault for the loss to the plaintiff. After applying the comparative negligence factor, on April 21, 2014, the court entered final judgment in favor of plaintiff in the amount of $15,816.699.11, jointly and severally, against the defendants.

On July 28, 2014, the court denied defendants' post-trial motion for new trial and renewed motion for judgment as a matter of law. The court now turns its inquiry to the defendants' current motion for remittitur of both the economic and non-economic damage awards, or alternatively, for a new trial on damages.

Turning, first, to the defendant's challenge to the economic damages awards, the court concludes that the evidence adduced at trial reasonably supports the jury's verdict on these components of loss, and summarily denies the defendants' challenge to this aspect of the verdict.[1]

The court's analysis turns, next, to the jury's non-economic damage award. Here, the defendants argue that the jury's total award of $20,000.000.00 for intangible damages is so excessive that it could only have been the result of passion or prejudice, or consideration of improper elements of damage, and further that the amount awarded bears no reasonable relationship to the amount of damages proved, requiring the court to substantially reduce the award, or alternatively, vacate the judgment and order a new trial.

The court does not agree that the verdict was the result of passion or prejudice. To the contrary, the court was impressed by and acknowledges the extraordinary effort that was expended

---

[1] On the challenge to the award for net accumulations of the Estate of Darian Wisekal, the defendants contend there was insufficient evidence of a consistent work history to justify the award derived by the jury. However, the record contained evidence that Mrs. Wisekal was employed in the past, and that she brought significant income in to her family through creative efforts at employment outside of the home. The jury was entitled to consider these past efforts at employment in projecting Mrs. Wisekal's future ability to earn money, had she lived her normal lifespan, as well as the likelihood that Mrs. Wisekal likely would have been able to return to the work force on a full time basis and save additional monies as her children grew and enjoyed increasing independence from their parents.

by the jurors in attendance in this case, as reflected in their obvious attentiveness throughout the entirety of the trial proceedings and their diligence in the deliberative process. However, the court does conclude that the amount of non-economic damages awarded by the jury was excessive and unreasonable in relationship to the amount of damages proved and was not logically supported by the evidence presented, and for these reasons, as more particularly detailed below, the court has determined to order a remittitur of the non-economic awards, failing acceptance of which the case shall be resubmitted to trial by jury on the issues of damages only.

## II. Discussion

Under Florida law, an award of non-economic damages must bear some reasonable relation to the facts, the status of the parties, and the philosophy and general trend of prior decisions in similar cases. *Bravo v. United States*, 532 F.3d 1154, 1162 (11th Cir. 2008), citing *Johnson v. United States*, 780 F.2d 902 (11th Cir. 1986) (quoting *Fla. Dairies Co. v. Rogers,* 119 Fla. 451, 161 So.85, 88 (Fla. 1935)). In reviewing the general trend of decisions in similar cases, the court should generally limit its inquiry to cases where pain and suffering awards were upheld against excessiveness challenges in similar scenarios, with a particular focus on cases drawn from the state appellate court having jurisdiction over the location where the tort in question occurred. *Id.*

Under Florida statutes, the court is further obligated to consider the following criteria in determining whether an award is excessive or inadequate in light of the facts and circumstances presented to the trier of fact: (1) whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact; (2) whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable; (3) whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture; (4) whether the amount bears a

reasonable relation to the amount of damages proved and the injury suffered, and (5) whether the amount awarded is supported by evidence and is such that it could be adduced in a logical manner by reasonable persons. § 768.74 (5), Fla. Stat. (2013).

In determining the reasonableness of a verdict, the court applies an objective standard. If the jury's award is so extravagant as to shock the judicial conscience, or it is manifestly unsupported by the evidence or indicates that the jury was influenced by passion, prejudice or other matters outside the record, the court in its discretion may set aside the verdict. *Citrus County v. McQuillin*, 840 So.2d 343, 347 (Fla. 5th DCA 2003).

In this case, the defendants argue the jury's non-economic damage awards were excessive compared to awards sanctioned by Florida appellate courts for surviving minor children and spouses in similar wrongful death cases, and that there is no evidentiary support for the extraordinarily large non-economic damage awards made in this case. This court, charged with the obligation of "walking a well-worn and clearly marked path paved by the Florida court that would have reviewed this judgment if it had been rendered in a state court," *Bravo v. United States*, 532 F.3d 1154, 1161-1162 (11th Cir.2008), agrees that the non-economic damage awards in this case were excessive under this yardstick, and has accordingly determined to issue a remittitur order, or in the alternative, an order for new trial on the issue of damages only.

At the outset, the court wishes to acknowledge the enormity of the loss suffered by the minor children of Mrs. Wisekal, and their entitlement to recover a substantial amount of money in non-economic damages to compensate them for mental pain and suffering resulting from the loss of their mother's support and companionship. Similarly, the court recognizes the genuine loss suffered by the surviving spouse of Mrs. Wisekal, and his accompanying entitlement to non-economic damages.

While recognizing these real losses and entitlements, the court's task here is to determine whether each of the individual non-economic damage awards at issue in this case bears a reasonable relationship to the evidence, and it begins this task with an examination of "a cold record without being subjected to prejudice and bias that may be occasioned in the emotionally charged atmosphere of a trial courtroom." *Bravo, supra* at 1161 (quoting *Seaboard Coast Line R. Co. v. McKelvey*, 259 So.2d 777, 781 (Fla. 3d DCA), *approved by*, 270 So.2d 705 (Fla. 1972)). Further, under *Bravo,* the court must perform this task by drawing heavily from non-economic damage awards made by juries in similar wrongful death cases which were challenged on appeal for excessiveness and upheld by the governing state appellate court, with particular focus on the appellate court which controls the jurisdiction under which the tort at issue occurred. Having made this review here, the court concludes that the award of non-economic damages to the survivors of Mrs. Wisekal in the total amount of $20 million is excessive, and does "jar or shock the judicial conscience" of the court. *Id.*

The court's conclusion is buttressed by the fact that $7.5 million individual awards to surviving Wisekal children in this non-tobacco litigation context finds no precedent in Florida case law, and is far in excess of challenged non-economic wrongful death damage awards which have been sustained on appeal in the Fourth District Court of Appeal, the state appellate court governing cases in this district, and other mid-appellate courts of appeal throughout the State of Florida. *See Bravo v. United States*, 532 F.3d at 1162-63, and cases collected, *supra.* The court further agrees that the tobacco litigation cases cited by the plaintiff in effort to justify the jury's verdict in this case are not "similar" cases involving adequate comparators. Unlike the tobacco litigation surviving spouses, many of which were beneficiaries of 30-year plus marriages, the Wisekal marriage existed about 14 years before the death of Mrs. Wisekal, and towards the end it was clouded, at least briefly, by private contemplations of divorce on the part of Mrs. Wisekal. Further, this case presents no

comparable element of aggravated liability as that which might predictably attach to tobacco cases involving decades of industry suppression of vital consumer safety information in the name of company profits.

Further, while the court does not in any way minimize the grievous loss suffered by the surviving children of Mrs. Wisekal, it harbors a real concern that the emotionally charged photograph of Mrs. Wisekal in a severely emaciated state, with her two minor children in attendance, may have improperly influenced the jury to the point where the awards bore no reasonable relationship to the evidence. In this respect, the court observes that the children did not testify at trial regarding grief and pain caused by loss of their mother's companionship, or how her loss had affected their day-to-day lives. Rather, the plaintiff relied on the testimony of Mr. Wisekal, the children's father and surviving spouse of Mrs. Wisekal, to describe the closeness of the bond, which he illustrated in part with a video of a family holiday where the jury could view the intimate interaction between Mrs. Wisekal and her children directly.  Mr. Wisekal also testified that the children were afraid to sleep alone, or play outside alone since the loss of their mother, out of an apparent fear of losing their remaining parent.  While this evidence surely depicted a tender and loving relationship between the decedent and her children, and a poignant grief which lingers with the children in her absence, at heart it is evidence that the children suffered a grief common to all children who endure the loss of a parent.  There was no evidence of any physical or mental abnormality or emotional impairment which the Wisekal children suffered due to the death of their mother.

Thus, while it is impossible to point with precision to the cause of the excessive verdict on behalf of the surviving minor children, the record suggests two possible influential factors. First, the shocking contrast between the video-taped presentation of Mrs. Wisekal's interaction as a loving,

vibrant, caring mother with her children in day–to-day life, juxtaposed against the jarring photo of a bedridden Mrs. Wisekal in a near-death and severely emaciated state, surrounded by her two small children.  A second possible contributing factor may have been the ill-advised defense strategy of attempting to portray the decedent as an essentially unemployable person addicted to prescription pain medicines, carrying emotional issues and learning disabilities that prompted a sixteen-year course of treatment by therapists, counselors and doctors for mental health problems. That is, the court is deeply concerned that the defense strategy of using this personal, intimate information, regarding a deceased woman who could not defend herself, may have influenced the jury to the point of inflating the non-economic damage award beyond any reasonable relationship to the evidence of damages presented.

With regard to the non-economic losses of a surviving spouse, under Florida law, evidence of marital discord is probative of the extent of the survivor's mental pain and suffering and loss of the decedent's companionship and society as a result of the wrongful death.  *Hiatt v. United States*, 910 F.2d 737 (11th Cir. 1990) (upholding $100,000 award in non-economic damages to surviving wife where record indicated that wife suspected husband of infidelities and couple had informally separated for a period of time); *Adkins v Seaboard Coastline R. Co*., 351 So.2d 1088 (Fla. 2d DCA 1977) (evidence that decedent allegedly promised to marry paramour shortly prior to death was probative of extent of surviving spouse's mental pain and suffering).

In this case, there was evidence of marital distress, with specific evidence of Mrs. Wisekal's contemplation of divorce which was noted in the records of one of the doctors Mrs. Wisekal consulted after the Wisekal family relocated from New Jersey, to Georgia and finally to Florida, shortly prior to the time of Mrs. Wisekal's cancer diagnosis. While Mr. Wisekal testified he was unaware of any marital discord, this uncontradicted evidence was a highly relevant consideration --

one which does not appear to have been tempered into the jury's assessment of Mr. Wisekal's non-economic damages. Further, there was no evidence that John Wisekal experienced an unusually disruptive or pathological loss of a magnitude beyond that of any spouse who endures the premature loss of his or her mate.

On this record, objectively reasonable persons could not conclude that the surviving children were automatically entitled to $7.5 million each for the death of their mother, or that Mr. Wisekal as surviving spouse was entitled to $5 million for the loss of his wife. With this, the court concludes that the jury could only have reached its total $20 million non-economic damage award though speculation or conjecture, or consideration of improper elements of damage, and that the award is due to be remitted.

Recent Florida appellate decisions reviewing excessiveness of jury awards in the wrongful death context -- outside of tobacco litigation -- buttress the court's conclusion that the award in this case is beyond the outer limits of reasonability, and that it is appropriately reduced to bring it in line with the general trend in similar wrongful death verdicts sustained on appeal by state courts in this district. *See Bravo, supra*, citing *Glabman v De La Cruz*, 954 So.2d 60, 62-63 (Fla. 3d DCA 2097) (per curiam) (reversing as excessive $8 million in non-economic damages to parents of teenage girl who died as a result of medical malpractice); *Citrus County v McQuillin*, 840 So. 2d 343, 347 (Fla. 5th DCA 2003) (sustaining $4.4 million verdict in non-economic damages to seven-year-old son of woman killed in car accident, observing it to be "on the outer limits in size," but not so excessive as to require reduction); *Kammer v Hurley*, 765 So.2d 975 (Fla. 4th DCA 2000)(upholding $2.5 million award to each parent for mental pain and anguish experienced in wrongful death of baby caused by physician's negligent crushing of skull just before birth); *Walt Disney World Co. v. Goode*, 501 So.2d 622 (Fla. 5th DCA 1986) (upholding $1 million for past and future pain and suffering to each

parent of a child who drowned on amusement park premises). While much higher verdicts have been sustained in extraordinary cases involving unusually torturous injuries sustained in horrific accidents, *see e.g. General Motors Corp v. McGee*, 837 So.2d 1010 (Fla. 4th DCA 2002)(upholding $30 million non-economic damage award to parents who witnessed burning of trapped child and excruciating medical treatment), this case does not fall in this genre of human misery, and in any event, is not necessarily guided by a single outlier award sustained by the Florida state appellate court controlling tort cases in this district.

For the above reasons, the court concludes that the non-economic damage awards made by the jury in this medical negligence case, arising out of a faulty PAP smear interpretation, were far greater than that which was reasonably supported by the evidence, and are "so extravagant" as to "shock the judicial conscience."  The court further agrees with the defendants' proposed remittitur of $2,000,000 per surviving minor child, plus $1,000,000 for the surviving spouse, amounts which the court finds appropriate in light of the facts and circumstances presented to the jury and the factors set forth in §  768.74 (5), Florida Statutes.

It is accordingly **ORDERED AND AJDUDGED:**

1. The defendants' motion for remittitur [ECF No. 301] is granted with respect to non-economic damage awards only, and the respective awards of the survivors are reduced to the following amounts:  $2 million per surviving child,  $1 million  for  the surviving spouse. ($5 million total aggregate award; $ 3.75 million total net award for non-economic damages after reduction for comparative negligence) The defendants' motion for remittitur is otherwise denied.

2. The plaintiff has **TEN (10) DAYS** to file written acceptance or objection to this order of remittitur. If the plaintiff agrees to the remitted amounts, the court shall enter amended final

judgment accordingly. If the plaintiff does not agree to the remitted amounts, the court shall order a new trial on the issue of damages only pursuant to § 768.74 (4), Fla. Stat. (2013).

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 28th day of July, 2014.

_____
Daniel T. K. Hurley
United States District Judge

cc. all counsel